All right, so the next item on the docket is 5-25-0535 Klug. I hope I'm pronouncing that correctly. Klug v. Klug. Counsel, are you ready to proceed? All right, Counsel for Appellant, if you would come forward. If you would state your name for the record so that we can have that. May it please the Court, my name is Hud Morsigian. I represent the Plaintiff Appellant. In this case, Brenda, I believe it's Klug. Klug, thank you. And it's my honor to be before you today. Appreciate your time. In this case, Ms. Klug, we brought suit against the defendant in five separate counts. Unjust enrichment, quantum merit, breach of contract, oral contract, fraud, and equitable installment. This case, as you know, is in its very initial pleading stages. The case was dismissed on the amended complaint. The defendant has not even answered yet. The circuit court's decision on the entire case, it being dismissed, is all based on the statute of frauds. So the circuit court analyzed the statute of frauds issue with regard to the oral contract. I disagree with that. We'll come back to that. It's unenforceable. But then I think the clear error is the court then said, well, all the other counts, you can't bring those because the statute of frauds applies and it negates or makes, you can't bring all the other counts. I'm focusing my argument today, at least at the beginning, on the unjust enrichment and quantum merit theories. So the question is, and it's purely a question of law, does the statute of frauds bar unjust enrichment and or quantum merit theories? And I believe it's pretty clear that it doesn't. I've cited many cases in my brief, and I have the same cases in my reply brief, I believe. I believe there are nine different cases, either government cases or interpreting Illinois law. Those cases also cite other Illinois law, plus poor bond contracts, lowest in on contracts, restatement of contracts, restatement third of restitution and unjust enrichment, and the restatement of restitution. All of these support the proposition that the statute of frauds does not bar unjust enrichment and quantum merit claims. All the cases I think, except for maybe one, that I've cited have the same factual pattern. That is, some type of oral agreement, the court found that the oral agreement was unenforceable because of the statute of frauds, and the court, in their opinion, says, but you have unjust enrichment and quantum merit, both of which are quasi-contract, obviously, theories to rely on. So it seems pretty clear to me from Illinois law and all these other contract sources that the statute of frauds does not apply to bar unjust enrichment and quantum merit. Isn't this what this court held previously in Marlin? Yes, exactly. And it is an unpublished decision from 2017, but it does stand for that proposition, doesn't it? It's the exact same proposition. It is removed 23. That's why I cited the two cases that this court cited in support of that, which is Roddy, R-O-T-I, and then the K. Marlin construction. And the beauty of Emmerich Farms is the court has had it twice, because the circuit court, the tenant farmer sued the landowner on a breach of oral contract, and then that's counts one and two, counts three and four were unjust enrichment and quantum merit, very similar to our case. At the circuit court level on the first go-around, the court found in favor of the tenant farmers. The landowner defendant appealed. This court said, well, the statute of frauds barred it. They found on the breach of contract. This court said the statute of fraud bars, makes the contract unenforceable, but we're remanding it on counts three and four, unjust enrichment, quantum merit. So that proves my point. Then it goes down the back to the circuit court. They tried a case on those two theories. They find against the plaintiff. The plaintiff appeals, comes back to this court, and this court then reverses and enters a judgment on counts three and four, unjust enrichment and quantum merit, for the tenant farmer for $121,000 and change. So twice. And that Miller case is a Supreme Court case, correct? Kay Miller? Yes. Let me see. I have it. That's a Supreme Court case, correct? Looks like it's me. Why don't I have it? I have it. It's all right. I've answered my own questions. Kay Miller is definitely supportive. The only thing I would say, well, it's definitely supportive. So if we go to the other case, and you guys stop me, this is. Well, at some point we'll hear about the breach of contract. Okay. I really would like to get your input there.  On that situation, okay, the statute of frauds obviously applies. I mean, it's an analysis. What the court's error with regard to the statute of frauds I think is twofold. One, the first error is the court misconstrued the performance exception, okay? And it's in their order specifically. The statute of frauds, we all know what that is. There's an exception. If one party performs, then the statute of frauds does not apply. And the rationale for the full performance doctrine is that when one party, in reasonable reliance on the contract, performs all its obligations, it would be unfair to allow the other party to accept the benefits under the contract, but to avoid its reciprocal obligations by asserting the statute of frauds. The other rationale, which is in other cases, but when one party fully performs, that is an indication that there really was a deal. So you're kind of, you know, the fraud thing kind of goes out the window. So there's a performance exception. The error that the circuit court made is that it said the performance has to be within one year of the inception of the contract. And that's not the law. And it's specifically set forth in this Nostes, I'm not sure if I'm pronouncing that correct, versus ServiceMaster case, which I've cited and cited several other cases, too. But that case specifically states the argument was made in that case the same as the defendants make in this case. And the court said, these arguments are not well taken. Quote, first, the rule of law is that full performance on the part of one of the parties to an oral agreement bars application of the Frauds Act. There is no requirement that the full performance take place within one year. The case decided by defendant did not support its contention regarding a one-year completion requirement. That's exactly what the court, in its order, says that the court acknowledges that there's a full performance within one-year exception. So that's just wrong. Yeah, I'm looking at the appellee's brief, and they're saying because it was even under your suggestion it was five one-year contracts. Right. It couldn't be completed. And you're saying that it doesn't matter if it couldn't be completed within five years. The performance exception would still apply under the case you said. Yes, and actually for the five-year, five contracts or one contract is really irrelevant in our argument. And which case are you relying on for that? It's N-O-E-S-G-E-S versus ServiceMaster. Got it. Okay, thank you. And here's where the confusion lies, okay? There's a performance exception. So we have some type of deal. If I perform all my obligations, even if it's three years out, then that's an exception. Where it gets confusing, or I think where the court conflated the two kind of exceptions, there's another, I don't even know if it's called an exception, but it's if the contract is capable of being performed within one year. Okay, so it's kind of, that's not really an exception, but it's like looking at the wording of the statute of frauds. It says if it's not capable of being performed in one year. So call it an exception, call it whatever, but that has a one-year limitation on it. So that's related to the statute of frauds and the issue of performance exception. You say it's regardless of the wording. It's a total exception. And I look at it this way. If the person trying to enforce the contract, they can perform at any time because they're trying to enforce the contract. If you're trying to, if it was never performed, if I never performed it, or even if I did perform it, if I'm trying to make, say that the one-year thing is, was it capable of the defendant to perform within one year? And I, so I think it's, I think the law is clear that the one-year performance, full performance exception does not, is not limited to one year. The other side of the story is that one, is the contract capable in the abstract of being performed within one year? By the one who you're trying to enforce it against. And there, I still think we win, but it's a lesser argument in my opinion because the way the courts talk about it is, it's, is it theoretically possible? Even though the parties didn't contemplate this thing to be done in one year, is it theoretically possible for it to be done in one year? And that's the, several cases, but I think Marchesti is the one that I relied on most. Which is a very similar case in that somebody loaned, a guy loaned a friend some money and said, hey, get on top of your bills when, when you're able, then pay me back. And the court held, yeah, I mean, it probably wasn't contemplated to be within a year. It's, it was theoretically possible that the lady could have got some money somehow and paid, paid the guy back within a year. That's very similar to our case. Our case is, the deal was, hey, when you are able, you either start making these payments or get refinanced and you, it blows on you. So the Marchesti case, I think I'm saying that correctly. Okay. Barnes, sorry, Barnes versus Marchesti. That case is directly on point, on the capable of being performed within one year. But the performance exception is not, it takes it out of the realm of being capable of saying it was performed. And that does not have a one year limitation on it. Men to the hold. Men to the hold. I heard men to the line.  But I've never heard men to the hold. Do you want to address that? I never had until Tom brought it up. Thank you, Tom. The court liked it. I didn't like it. I saw the transcript, yes. It's a, I've addressed it in my brief and I don't want to take all that much time. But it's not applicable for several reasons. It's a strange, antiquated theory, very creative on Tom's part. But it doesn't apply, and I'm just going to cut to the chase. I've got a lot of language in there saying it's antiquated and all this kind of thing. It's derived from a wrestling term. But there's I think four or five reasons. First, that it doesn't apply. First, it's meant to stop somebody in the middle of litigation from switching from one contract defense and then switching to a totally different contract defense, and it's kind of unfair to the other party. We're not trying to evade the performance of contractual obligations. We're trying to enforce them, and we're not in the middle of litigation. Second, it doesn't apply at the pleading stage, which we are. Obviously, we haven't even had an answer. So I can see if you're in the middle of the case and you switch your theories, it could possibly. Also, it goes totally against our state's ample ability to amend complaints. Which may be why we don't see it very often. Yes, yes. There's a couple of other reasons that are in the brief. This was the second amended complaint, and this superseded the two prior complaints. But it appears the trial court was considering the allegations in the earlier complaints and ruling on this pending motion. Is that accurate? I think kind of, kind of sort of. And the trial court knew that. Yeah, I think, yeah. I mean, I would say, and I'm not trying to defend it. Whether it's five separate contracts or one, the performance exception still holds. And all the other stuff with the unjustified enrichment, that all is the same argument. So in some sense, it's not all that relevant. But I did think it fit the facts more. Because she had to re-up every year and fill out all these forms and get a loan for each school year. And the reality is, he may not have needed it, but he did it, you know. So anyway, thank you for that. Any other questions? No. All right. You'll have time for those. Thank you very much. Thank you, Your Honor. All right. Counsel for Kelly? Yeah, police and court. Thomas C. Scherzer here for the Defendant Williams Club. Well, just to get right to the middle. Let's start with that. Right to that. It was used against me in a case. Ah. By actually Judge Coker in a case, and now I recalled it. But the point of it is that you can't change positions in the middle. And it particularly applies to a contract. And it goes akin to like, it's an equitable remedy. It's an equitable issue. And it goes akin to like a judicial and evidentiary admission. And it's, you know, no one, you know, the plaintiff was well within the knowledge of what this alleged agreement was. Her alleged oral agreement. And she's the one that came in and made the first complaint. And she amended and made a second, first amended complaint. And ultimately, Your Honor, that's correct. The last complaint was the second amended complaint that was ultimately dismissed. And that's why we're here. And the important thing, I think, about it and why it could apply here is that they're trying to change the allegations, the theory of their case, in order to defeat the statute of flaws. Counsel, I mean, this is a motion to dismiss. I mean, a second amended complaint happens all the time, right? Yes. As I said, I had never even heard this term. So it seems that it would not be applicable at this stage in the proceedings. I understand the rationale later in proceedings. But I'm having a hard time at this stage. I can appreciate that, Your Honor. Yeah, you understand my concern. Yes, yes, I do. And certainly amendments to pleadings are liberally granted. We all know that in the Code of Civil Procedure. But let's think about what they're actually saying here. The original complaint says that there was a meeting of the minds on April 29th, Your Honor, before April 29th, 2016. And what was the deal? The deal was that stepmom would take out a parent loan to pay for her stepson's college education. And then she alleges that they had a meeting of the minds while he was a senior in high school. Hadn't even graduated high school yet. And had a meeting of the minds that says, okay, you take out the loan. You put it in your name. It's a parent loan with the Department of Education. And I will pay it when I'm done with my five-year degree. He had to get a five-year chemical engineering degree. It wasn't a four-year other degree. So that's the deal. When they change the theory to the second amendment complaint, they allege that now there's five contracts. One for each school year. Well, if there's another contract each year, that implies that there's another meeting of the minds before each school year. And they go to the same agreement. But they remember that specific date of April 29th, 2016. But in these five new contracts, they don't even have a date of when they met or discussed about it. They just say, we did. They're basically changing one contract that had performance obligations, taking it as true, for each year. Each party does. There's many contracts that have performance obligations over time. I think of my mortgage. I have to pay it every month. Does that create a new contract every time I make a payment? I don't think so. But they're trying to take that one contract and to somehow say, no, really, each time we perform under this agreement, it constitutes a new contract. And that's why maybe mend the hold isn't the proper thing at this stage. But that's what I think the trial court, Your Honor, that you had asked about the trial court, just was considering the first two complaints and not the Second Amendment complaint. No, I think what he looked at, the trial court looked at and said, no, you've alleged one contract. You've alleged one meeting of the minds. There's a continuing obligation, performance obligation, as you've alleged. But each one of those do not amount to a new contract. The case of the silver strokes versus silver strokes that I cited in my brief is, I think, indicative of this. That's a case where they had a settlement. I don't know if it was 2301. It was predated 2301. I think your last case you guys heard. But they had a settlement agreement. It wasn't signed by the defendant. It wasn't signed by the court. It was in an order. And there was an initial payment of $15,000 and then $25,000, $1,000 payments. And the court in that case said, no, over 30 months, I think it was. No, that contract, this alleged oral agreement, because they didn't construe the order as a writing, that violates the statute of frauds. And remember, statute of frauds doesn't mean there isn't an agreement. It doesn't go to that. The statute of frauds, just for public policy reasons, says no action shall be brought. That's actually what it says. I guess what I'm struggling with, and this is why I ask counsel the question, you know, can the trial court consider the prior pleading allegations in the superseded pleading? Here's a 2619 motion. It's attacking a particular pleading, the Second Amendment complaint, the allegations therein, which we have to assume those allegations are true for purpose of ruling on that motion, as the trial court would have to do. And you've raised here, your client did an affirmative defense, an affirmative matter here, the statute of frauds. So the burden shifts then to you to then bring forth something here to show that that defense is viable, or relying on the allegations within the particular pleading that's being attacked, this being the Second Amendment complaint. So by considering the allegations in the superseded pleadings and ruling on that, that seems contrary to the law. And I understand what the trial court was thinking here, that as you're trying to plead around the statute of frauds defense, maybe you're not going to allow that to happen, right? But is that proper? Well, Your Honor, I don't think all those allegations that the trial court looked at, the April 29th to 2016 date, the terms of the agreement, they're all in the Second Amendment complaint. What's lacking in the Second Amendment complaint is subsequent meeting of the minds. And what's lacking in the Second Amendment complaint is, you know, for example, the Second Amendment complaint, just like the first two, says there was one master loan of promissory note executed by the plaintiff. It doesn't say year two, we've got to do a new promissory note. Year three, I've got to do a new promissory note. So I understand your point, Your Honor, but I think that when you look at the allegations in the Second Amendment complaint, they're all there. It's just that the trial court looked at this and said, you know, what you've alleged is really one agreement that was executed in 2016, that was not executed because we don't have a right, but that was actually entered into in 2016. And by its plain terms, it was incapable of being performed in one year. And it's not theoretically incapable. It's a reasonable interpretation. In Ms. Silvestro's case, remind me, was that on a motion to dismiss? The procedural posture was a summary judgment or motion to dismiss? In this case? In Ms. Silvestro's case. In Ms. Silvestro's case? Because you were relying on that pretty heavily. I have, let me take a, I'm not sure off the top of my head, Your Honor. I apologize. I'm not either. That's all right. No, I think it was, it was, it was not a motion to dismiss because they talked about the issue of, it may have even been after a bench trial, but I'm not 100 percent, because they talked about an issue of whether or not there was an acceleration clause that could have turned it into a one, a capable one year. But just to complete the third one, I think all of those elements are in there. Then the second amendment, those allegations in the second amendment complaint has the first two. They just keep adding. Just like the first complaint had three counts, the second amendment complaint has 17 counts. I thought the trial court sort of was referring to the prior proceedings. Maybe I'm mistaken. I can't speak to it off the top of my head, Your Honor, in terms of the trial court, whether or not they relied on it. I think the trial court in the order certainly relies on the allegations in the second amendment complaint. It may have a reference to these previous allegations, but I think it just goes to the fact that even with the second amendment complaint, I would assert, judge, that the allegations are still there. It's still there. And what's lacking here, it's still really one agreement. They just laid out the different performance exceptions on that. Can you address the performance? I don't want you to run out of time. Can you address the performance exception? Yes, Your Honor. The case relied upon by plaintiffs, I don't know if anybody's heard of the news case, N-O-E-S-G-E-S versus Service Master Company. I'll call it Service Master since I can't pronounce the first. That was a second district opinion out of 1992. And it does certainly say that a full performance can be an exception to the statute of frauds. I cite to a case, a Supreme Court case of McInerney versus Charter Golf Inc. that has a quote in it that says Illinois courts have held that a party who has fully performed an oral contract within the one-year provision may nonetheless have the contract enforced. So I'm not sure that the law is perfectly clear. I don't dispute that there's cases out there that say full performance outside of one year is made, bringing it outside the statute of frauds. But there certainly is a Supreme Court case from 1997 that indicates that that is within one year. However, what's the purpose of that? Let's think about that for a second. The purpose of that performance, and why is that an exception, is because it's an indicia of an agreement. It's a strong indication of the existence of an agreement. That doesn't apply here. We have a step-mom and a step-son. The law presumes a gift for family members. So it's certainly not unreasonable to think that a step-mom would pay for the college education of her step-son. Now, unfortunately, the family relationship didn't stay. But the fact that there is this performance doesn't give you any indication that there's an agreement in this particular case. How does it tell you whether or not the step-mom was going to agree to do this on her own? No. In the other case that you talk about, in the service master case, you have a situation where an individual is preparing, doing software work for a company, and the court said no one's going to work for a company if they didn't expect to be compensated. I get that. That is an indication of an agreement. But in this case, you have a step-mom and a step-son. And the fact that she got the loan is no indication of the alleged agreement. And I think that's the important thing here is that's what we're looking at here. And that's what the statute of fraud is supposed to do. And, you know, I know counsel said we had attacks on their character. I think, well, this whole case is an attack on people's character. We're saying there was a promise. She says there was a promise. My client says there wasn't. But the reality is the issue for the statute of fraud is because it's there, because the proofs, the problems with proofs in oral agreements like this make the trial of facts job, the court's job, nearly impossible. So the legislature said we're adopting the old English common law statute of frauds. And that's why you've got to put this in writing. And that's what we're looking at here, Your Honors, is that there is no indicia of an actual agreement by the performance. Now, if this motion were denied, your client could still raise this as an affirmative defense, correct? Yes, Your Honor. And then you could bring up these earlier pleadings that were filed, which raised different allegations as to what this agreement was, correct? Yes. And ultimately here the client has the burden of proof at trial on these matters. Yes. Not as to your affirmative defense, but still. It doesn't foreclose the ability to still defend this case on the basis of the statute of frauds if we were to reverse and remand. I would agree, Your Honor. Okay, thank you. And if I could just briefly, I know my light's flashing, address the equitable part. And those apply across all of them. And the key here is that we're not saying, I don't think the trial court's saying that you can't make a claim for unjust enrichment or quantum merit under certain factual circumstances. But when the entire predicate of the equitable claims of unjust enrichment and quantum merit are the promise, are the oral agreement, then the statute of frauds applies equally. Which case? Which case? Well, you have the Willsward Care Center case, which is a third district case out of 2006. There's also a Legat v. Legat Architects, Inc., a 2022 case that is an unpublished opinion. That is, the site is 210054-U. It's a second district, as I said. And it says the statute of frauds applies to equity actions as they relate to the alleged agreement. Okay? If there's no, what's the underlying basis of the unjust enrichment? What's the underlying basis of the quantum merit? The promise. Absent the promise, there is no unjust enrichment. There is no quantum merit. I don't think quantum merit is a proper one here. I think unjust enrichment would be if there is one because she didn't provide services and things like that. But absent the promise, there is no predicate for those claims. And that's why statute of frauds will apply when you're dealing with an equitable action that is predicated solely on the contractual matter. And then I know there's a promissory fraud, an equitable estoppel. I don't know if your honors want me to address. I know my time is up. Do you have any questions? No, I don't. Any questions? No. Okay. All right. Thank you very much. Thank you. All right. Rebuttal? Yes, your honors. Let's start with that. Yeah, typically it's this predicate of the statute of frauds. There is no such exception. The answer to your question is there is no support for that. No case says that. I've got nine cases that say the opposite. The case he relies on, Rosewood Care Center v. Caterpillar, is not on point. In fact, that case, the holding is that the statute of frauds did not even apply into the contract. In Digda, there was a promissory estoppel secondary cause of action, but they didn't get to it because the contract was valid. But the court said promissory estoppel can't be applied to allow recovery when the statute of frauds bars the claim, cannot be. So promissory estoppel would be barred. That's different from equitable estoppel. And then I search the case electronically. It does not ever say the words unjust enrichment. And the only time it says quantum merit is in the very final paragraph when it's just in passing. It doesn't hold anything about unjust enrichment or quantum merit. There is no case that supports that made-up exception by my opponent. In fact, it's contrary to logic. Think about it. Every quantum merit or unjust enrichment case, you've got to have some type of promise or deal between the parties that they thought was going to happen. Otherwise, you wouldn't have that theory. And I also point specifically to all the cases I've cited where there was an oral agreement. The court says statute of frauds makes it unenforceable, but then you still have unjust enrichment or quantum merit. The same thing, that you're going to have this underlying, you just don't have quantum merit out of the blue. I mean, you've got to have some type of agreement between the parties that doesn't rise to the level of being either an enforceable contract or maybe it's too big or maybe it's statute of frauds or whatever. You always have these backups, quantum merit and unjust enrichment. I also point out that most of these cases ride on a point with regard, now switching back to the contract, briefly. The McInerney case does not say what my opponent says it says. The McInerney case, and it's from 1997, only addresses the capable of being performed within one year aspect of the statute of frauds, not the full performance. I know it's confusing because the words are similar, but there's two separate things going on there. So that case does not, the only case that head-on addresses full performance, I think the one I found is the No Space case, that says full performance at any time is an exception to the statute of frauds. I can answer any questions you have, but I leave you with just from a practical standpoint, we've got the defendant who obtained a five-year engineering degree without having to pay for it, and his stepmother now is stuck with a bill for $121,000, and she got no benefit out of it. He got all the benefit out of it. And finally, I guess I should have said this before, and I said it in my brief, but there's a constant mischaracterization of the deal. The deal wasn't you pay me back after you graduate, it's you pay me back when you can. So that goes to the one-year possibility of performance on the part of the defendant. Again, the performance on the part of the plaintiff, she did everything she was supposed to do, he got all his money, he got his education, and that's an exception to the statute of frauds on the contract claim. Any questions? Thank you very much. Thank you for your well-reasoned arguments. We will take this matter under advisement, issue a ruling in due course, and have a great rest of your day. And we are going to take a brief recess. Thank you.